UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARREN MOORE,<br>CDCR # AZ5561,<br><br>                      Plaintiff,<br><br>vs.<br><br>JAMES HILL, Warden; RYAN BARENCHI, MD; M. BLAISDELL, MD; S. GATES, K. RODRIGUEZ, BENNY MARTIN, MD; CDCR; B. CAMPBELL; JOHN DOES #1–5,<br><br>                      Defendants. | Case No.: 3:24-cv-2159-RBM-LR<br><br>**ORDER:**<br><br>**(1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS [Doc. 2];**<br><br>**(2) DISMISSING COMPLAINT FOR FAILURE TO STATE A CLAIM PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B) AND 1915A(b)** |

Plaintiff Darren Moore ("Plaintiff"), an inmate proceeding *pro se*, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 ("Complaint") (Doc. 1), along with a Motion to Proceed *In Forma Pauperis* ("IFP Motion") (Doc. 2).  In his Complaint, Plaintiff alleges that while he was confined at Richard J. Donovan Correctional Facility ("RJD"), Defendants California Department of Corrections and Rehabilitation ("CDCR"), James Hill, Dr. Ryan Barenchi, Dr. M. Blaisdell, S. Gates, Dr. K. Rodriguez, Dr. Benny Martin, B. Campbell, and Does #1–5 (collectively, "Defendants") violated his Eighth Amendment right to adequate medical care by delaying surgery to treat his gynecomastia.  (*See* Doc. 1 at 2–4; Doc. 1-6 at 1–5.)

1

For the reasons discussed below, the Court **GRANTS** Plaintiff's IFP motion and **DISMISSES** the Complaint without prejudice.

### I.     MOTION TO PROCEED IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $405.[1] *See* 28 U.S.C. § 1914(a). A party may initiate a civil action without prepaying the required filing fee if the Court grants leave to proceed in forma pauperis ("IFP") based on indigency. 28 U.S.C. § 1915(a); *Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007).

To proceed IFP, plaintiffs must establish their inability to pay by filing an affidavit regarding their income and assets. *See Escobedo v. Applebees*, 787 F.3d 1226, 1234 (9th Cir. 2015). Prisoners must also submit a "certified copy of the [prisoner's] trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. §§ 1915(b)(1), (4). Prisoners who proceed IFP must repay the entire fee in installments regardless of whether their action is ultimately dismissed. 28 U.S.C. § 1915(b)(2); *Bruce v. Samuels*, 577 U.S. 82, 84 (2016).

In support of his IFP Motion, Plaintiff provided a copy of his prison certificate and trust account statement. (Doc. 2 at 4–9.) During the six months prior to filing suit, Plaintiff had an average monthly balance of $245.70 and average monthly deposits of $215.83. (*Id.*

---

[1] Civil litigants must pay an administrative fee of $55 in addition to the $350 filing fee. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2023)). The additional $55 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

at 4.) At the time he filed suit, he had an available account balance of $39.96. (*Id.*)

Accordingly, the Court **GRANTS** Plaintiff's IFP Motion. Because the initial payment installment would exceed Plaintiff's available funds, the Court assesses no initial payment. Instead, Plaintiff must pay the full $350 filing fee in installments, pursuant to 28 U.S.C. § 1915(b)(2).

## II.   SCREENING PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b)

### A.   Legal Standard

Pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), the Court must screen a prisoner's IFP complaint and *sua sponte* dismiss it to the extent that it is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010). "The standard for determining whether Plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Rule 12(b)(6) requires that a complaint "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). While detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Id*. The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*

To state a claim under § 1983, a plaintiff must plausibly allege "both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

### B.   Plaintiff's Allegations

In his Complaint, Plaintiff alleges that he was diagnosed with bilateral gynecomastia in 2020, which causes breast enlargement and other "painful symptoms." (Doc. 1-6 at 2.)

On or around April 6, 2022, Dr. Martin, Plaintiff's primary care provider at RJD, ordered a bilateral mammogram to rule out other abnormalities and would then consider referring Plaintiff for surgical consultation. (*Id.*) The mammogram was performed on June 7, 2022. (Doc. 1-3 at 1.) On November 14, 2022, Dr. Martin submitted a request for services ("RSF"), in this case "plastic surgery" for Plaintiff. However, the RSF was denied with instructions to "send [Plaintiff] to general surgery." (*Id.*) On November 22, 2022, Dr. Martin submitted an RSF order for general surgery, which was subsequently approved. (*Id.* at 2.)

Plaintiff had an appointment with the general surgeon, Dr. King, on February 15, 2023. (*Id.* at 2.) Dr. King reported that the size of Plaintiff's gynecomastia was "more than what he would usually take on" and recommended he work with a plastic surgeon to perform the surgery. (*Id.*; *see also* Doc. 1-6 at 2.)

On July 5, 2023, Dr. Martin submitted an RFS order for Plaintiff to receive plastic surgery. (Doc. 1-3 at 2.) During the five-month period between Plaintiff's appointment with Dr. King and Dr. Martin submitting the RSF, Plaintiff continued to experience painful symptoms cause by the gynecomastia. (*Id.*) After the RFS for Plaintiff to receive a plastic surgery consultation was initially denied, Dr. Martin appealed the denial and on August 23, 2023, the RSF was approved. (*Id.*; *see also* Doc. 1-6 at 2–3.)

Plaintiff consulted a plastic surgeon on October 24, 2023, who requested a mammogram and lab work prior to considering surgery. (Doc. 1-3 at 2.) The tests were completed on November 22, 2023. (*Id.*) On December 8, 2023, Plaintiff had an appointment with Dr. Martin who informed him that his surgery was still approved and was pending scheduling. (*Id.*; *see also* Doc. 1-6 at 3.) Plaintiff subsequently wrote "several letters" to Defendant B. Campbell, a "healthcare compliance analyst" for California Correctional Health Care Services ("CCHCS"), about the delay in scheduling the surgery and was later informed that an "appointment was still pending." (Doc. 1-6 at 3; *see* Doc. 1 at 4.) During this period, Plaintiff continued to suffer pain from his condition and was unable to exercise. (*Id.*) He also suffered psychologically as a result of being "call[ed] a

1  transgender" by other inmates because of his condition. (*Id.*) Between January and April
2  2024, Plaintiff submitted several medical grievances regarding the surgery delay. (*Id.*)

3      On January 9, 2024, Dr. Blaisdall, RJD's Chief Physician and Surgeon, informed
4  Plaintiff that his referral to a plastic surgeon had been cancelled because the plastic surgeon
5  stated that he did not perform the type of surgery Plaintiff needed. (Doc. 1-4 at 2.) Plaintiff
6  was again seen by a general surgeon on January 25, 2024, who also recommended that a
7  plastic surgeon perform the bilateral mastectomy. (*Id.*) On March 6, 2024, Plaintiff
8  discussed the recommendation of the general surgeon with Dr. Martin. (*Id.*) An RSF order
9  for a plastic surgery evaluation was approved on March 19, 2024. (*Id.*) In an April 15,
10 2024 response to one of Plaintiff's health care grievances, it was noted that Plaintiff was
11 "pending scheduling for plastic surgery evaluation and primary care provider follow up."
12 (*Id.* at 3.) It is unclear from the allegations in the Complaint whether the appointment was
13 ever scheduled or if Plaintiff ever received surgery. (*See id.*)

14     **C.**    **Discussion**

15     Plaintiff alleges Defendants violated his Eighth Amendment right to adequate
16 medical care by delaying surgery for gynecomastia and seeks compensatory and punitive
17 damages. (Doc. 1-6 at 6.)

18         **1.**    **Defendant CDCR**

19     First, the CDCR must be dismissed as a defendant. State prisons, correctional
20 agencies, sub-divisions, or departments under their jurisdiction, are not "persons" subject
21 to suit under § 1983. *Hale v. Arizona*, 993 F.2d 1387, 1398–99 (9th Cir. 1993) (holding a
22 state department of corrections is an arm of the state, and thus, not a "person" within the
23 meaning of § 1983). Additionally, if Plaintiff named the CDCR as a defendant in an
24 attempt to sue the State of California itself, his claims are clearly barred by the Eleventh
25 Amendment. *See Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam) ("There can be
26 no doubt . . .that [a] suit against the State and its Board of Corrections is barred by the
27 Eleventh Amendment, unless [the State] has consented to the filing of such a suit.");
28 *Dittman v. California*, 191 F.3d 1020, 1025–26 (9th Cir. 1999) ("The State of California

has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court.") (internal citations omitted). "This jurisdictional bar applies regardless of the nature of the relief sought." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).

Because the CDCR is not a "person" under § 1983, and such claims against the state are barred by the Eleventh Amendment, Plaintiff's claims against the CDCR are *sua sponte* **DISMISSED**. 28 U.S.C. §§ 1915(e)(2)(B)(ii)–(iii), 1915A(b)(1), (2).

### 2. Official Capacity Claims

For the same reasons, to the extent Plaintiff is suing Defendants Hill, Barenchi, Blaisdell, Gates, Rodriguez, Martin, Campbell, and Does #1–5 in their official capacities for money damages only, he is barred from doing so. An "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity" and are therefore treated as claims against the State. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). State officials sued for damages in their official capacities are not "persons" within the meaning of § 1983. *Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997). As such, the Eleventh Amendment bars a prisoner's § 1983 claims for money damages against state actors sued in their official capacities. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989). Such suits are no different than suits against the State itself and are thus barred by the Eleventh Amendment. *Id.* Therefore, Plaintiff's claims seeking monetary damages against Defendants Hill, Barenchi, Blaisdell, Gates, Rodriguez, Martin, Campbell and Does #1–5 in their official capacities are **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), (iii) and 1915A(b)(1), (2).

### 3. Eighth Amendment

Plaintiff also brings Eighth Amendment claims against Defendants Hill, Barenchi, Blaisdell, Gates, Rodriguez, Martin, Campbell, and Does #1–5 in their individual capacities. (Doc. 1-6 at 1–5.) The Eighth Amendment prohibits "cruel and unusual punishments." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To state an Eighth Amendment claim based on inadequate medical care, a prisoner must show that the

plaintiff had a "serious medical need," and the defendant was "deliberately indifferent" to that need. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). For purposes of this Order, the Court presumes that Plaintiff's gynecomastia condition constitutes a serious medical need. *Id.* ("First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'") (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997)) (internal quotation marks omitted).

Moreover, to show deliberate indifference, a plaintiff must plausibly allege the official knew of and disregarded "excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004). "The official must not only be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but that official "must also draw the inference." *Id*. Deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014).

However, a delay in treatment does not constitute a violation of the Eighth Amendment, unless it was harmful. *See McGuckin*, 974 F.2d at 1060. While the harm caused by delay need not necessarily be "substantial," *id*. at 1060, 1063 n.12, the Eighth Amendment is violated if "delays occurred to patients with problems so severe that delays would cause significant harm and that [d]efendants should have known this to be the case." *Hallett v. Morgan*, 296 F.3d 732, 746 (9th Cir. 2002). "Deliberate indifference is a high legal standard." *Toguchi*, 391 F.3d at 1060. As such, a showing of negligence or inadvertence is insufficient to establish an Eighth Amendment violation. *Jett*, 439 F.3d at 1096; *Estelle*, 429 U.S. at 105–06.

### a. Dr. Martin

Plaintiff seemingly premises his Eighth Amendment claim against Dr. Martin on the "delay" between Plaintiff's consultation with Dr. King on February 15, 2023, and Dr.

Martin's submission of the RFS order seeking approval for a plastic surgeon consultation on July 5, 2023. (*See* Doc. 1-6 at 5.) However, "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference . . . unless the denial was harmful." *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (citation omitted).

In this case, there are insufficient facts to plausibly allege that Dr. Martin delayed his submission of the RFS order with a "knowing disregard" of an "excessive risk" to Plaintiff's health. *See Toguchi*, 391 F.3d at 1057. Plaintiff's allegations do not clearly establish when Dr. Martin became aware of Dr. King's recommendation or whether Dr. Martin delayed his submission of the RFS order knowing that such a delay would cause "significant harm" to Plaintiff's health. *See Hallett*, 296 F.3d at 746. Rather, as currently pled, Plaintiff's allegations show that Dr. Martin consistently attempted to schedule Plaintiff's surgery. Indeed, Dr. Martin submitted the initial RFS order for the surgery. (Doc. 1-3 at 2.) When it was denied, Dr. Martin appealed the denial and was ultimately successful in getting it approved. *Id*. Dr. Martin also appealed the denial of Dr. King's RFS order requesting an appointment for Plaintiff with a plastic surgeon. (Doc. 1-3 at 2; *see also* Doc. 1-6 at 2.)

Accordingly, Plaintiff fails to plausibly allege that Dr. Martin acted with deliberate indifference and his Eighth Amendment claim against Dr. Martin is therefore **DISMISSED**. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

### b. Dr. Barenchi and Gates

Plaintiff alleges Defendants Dr. Ryan Barenchi and S. Gates violated his Eighth Amendment rights by failing to grant his administrative grievances regarding the delay in surgery. (Doc. 1-6 at 3–4.) A prisoner must "exhaust his administrative remedies before filing a lawsuit concerning prison conditions." *Sapp v. Kimbrell*, 623 F.3d 813, 821 (9th Cir. 2010) (citing 42 U.S.C. § 1997e(a)). However, the denial of an administrative grievance or claim, without more, is insufficient to establish a civil rights violation because there is no constitutional right to a particular grievance process or outcome. *See Mann v.*

*Adams*, 855 F.2d 639, 640 (9th Cir. 1988) ("There is no legitimate claim of entitlement to a grievance procedure."); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (concluding the denial of, or failure to respond to, administrative grievances will not support a civil rights claim); *Nelson v. Giurbino*, 395 F. Supp. 2d 946, 956 (S.D. Cal. 2005) (reasoning that allegations regarding denial of a director-level appeal do not state a claim because "there is no legal entitlement to a grievance procedure"). Thus, "[w]here the defendant's only involvement in the allegedly unconstitutional conduct is 'the denial of administrative grievances or the failure to act, the defendant cannot be liable . . . .'" *Grenning v. Klemme*, 34 F. Supp. 3d 1144, 1157 (E.D. Wash. 2014) (quoting *Shehee*, 199 F.3d at 300).

Here, Plaintiff alleges only that Defendants Barenchi and Gates reviewed his grievances regarding the delay in surgery and failed to rectify the situation.[2] (Doc. 1-6 at 3; *see also* Doc. 1-3 at 3; Doc. 1-5 at 2.) Thus, to the extent Plaintiff's claims against them are based on their responses to his grievance, he fails to state a claim. *See Shallowhorn v. Molina*, 572 F. App'x 545, 547 (9th Cir. 2014) (affirming dismissal of claims against defendants who "were only involved in the appeals process") (citing *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003)). Accordingly, the Court **<u>DISMISSES</u>** Plaintiff's claims against Defendants Barenchi and Gates. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *Iqbal*, 556 U.S. at 678.

### c. Dr. Blaisdell and Dr. Rodriguez

Plaintiff also fails to state an Eighth Amendment claim against Defendants Blaisdell and Rodriguez. In his Complaint, Plaintiff alleges that Defendants Blaisdell and Rodriguez "were alerted" to the delay in surgery from his submissions of requests for medical care and administrative grievances from January 20, 2024, February 16, 2024, and April 5,

---

[2] In their responses to Plaintiff's grievances, neither Defendant Barenchi nor Defendant Gates "denied" Plaintiff's surgery. Instead, they noted that Plaintiff's surgery was "approved," and that his surgical consult appointments were "pending scheduling." (*See* Doc. 1-3 at 2; Doc. 1-4 at 2.)

2024. (Doc. 1-6 at 3.) Plaintiff, however, appears to merely assume that Defendants Blaisdell and Rodriguez reviewed his submissions. Such speculation is insufficient to plausibly allege Defendant Blaisdell and Rodriguez's deliberate indifference. *See Bell Atl. Corp., v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level."). Moreover, assuming Defendants Blaisdell and Rodriguez were aware of Plaintiff's complaints, Plaintiff provides no specific facts regarding their actions, or failure to act, to delay his surgery. *See Jett*, 439 F.3d at 1096. During the same time frame that Plaintiff filed his grievances, Plaintiff continued to receive medical care in anticipation of the surgery's rescheduling. Specifically, he had a consultation with a general surgeon on January 25, 2024, saw his primary care physician on March 9, 2024 to discuss his options based on the general surgeon's recommendation, was approved to see a plastic surgeon on March 19, 2024, and scheduling for his appointment with a plastic surgeon was pending as of April 15, 2024. (*See* Doc. 1-4 at 2.) Thus, Plaintiff's Eighth Amendment claim against Defendants Blaisdell and Rodriguez are **DISMISSED**. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

### d. Defendant Campbell

Plaintiff fails to state a claim against Defendant Campbell for similar reasons. Plaintiff alleges that Defendant Campbell is RJD's "health care compliance analyst," responsible for "assur[ing] that medical treatment is provided in a timely manner." (Doc. 1-6 at 3.) Plaintiff "wrote several letters" to Defendant Campbell about his delayed surgery and, in response, he "was informed an appointment was pending." (*Id.*)

As discussed above, to plausibly allege deliberate indifference, Plaintiff must allege that Defendant Campbell personally engaged in a purposeful act or failure to respond to the purported delay in surgery. *Jett*, 439 F.3d at 1096. In his Complaint, Plaintiff does not provide any factual support for such allegations and fails to specify when he sent the letters

to Defendant Campbell or when he received the response.[3] His vague and conclusory allegations are insufficient to support a claim. *See Iqbal*, 556 U.S. at 678. Plaintiff fails to plausibly allege that Defendant Campbell acted with deliberate indifference and his Eighth Amendment claim is therefore **DISMISSED**. *See id.*; 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

### e. Defendant Hill

"Under Section 1983, supervisory officials are not liable for actions of subordinates on any theory of vicarious liability." *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (citation and internal quotation marks omitted). As such, Plaintiff cannot hold Defendant James Hill, the warden at RJD, vicariously liable based on his supervisory position as RJD's warden.

While there is no vicarious liability under § 1983, a "supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Id.* at 977 (citation and internal quotation marks omitted). Here, Plaintiff alleges that he attempted to notify Defendant Hill about his delayed surgery by filing a "regular 602 [administrative appeal]." (Doc. 1-6 at 3.) After his "602 [was] rejected," he sent "letters" to Defendant Hill concerning the delay in surgery. (*Id.*) It is not clear when Plaintiff sent the letters, whether they were actually received (or read) by Defendant Hill, or what information was provided about Plaintiff's condition. These facts are too vague and conclusory to plausibly allege that Defendant Hill had knowledge of the alleged unconstitutional conduct by his subordinates or that he acquiesced to it. *See Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012) (citing *Iqbal*, 566 U.S. at 681–83).

---

[3] While Plaintiff does not provide dates, it appears the letters were sent some time after his appointment with Dr. Martin on December 8, 2023, during which Plaintiff informed him that his surgery was still approved and was pending scheduling. (*See* Doc. 1-6 at 3.) Plaintiff was subsequently seen by a general surgeon on January 24, 2024. (*See* Doc. 1-4 at 2.)

1  Therefore, Plaintiff's claim against Defendant Hill is **DISMISSED** for failure to state a
2  claim. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

### f. Does #1–5

Finally, Plaintiff also fails to state a claim against Doe Defendants #1–5. The use of fictitiously named or "Doe" defendants is generally not favored. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) (citation omitted). However, amendment is allowed to substitute true names for fictitiously named defendants. *Merritt v. Cnty. of Los Angeles*, 875 F.2d 765 (9th Cir. 1989). To successfully state a claim for relief, Plaintiff must identify each Doe defendant individually (*e.g.*, Doe 1, Doe 2, etc.) and explain the specific actions taken by each defendant that deprived him of his constitutional rights. *See Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) ("A plaintiff must allege facts, not simply conclusions, t[o] show that [each defendant] was personally involved in the deprivation of his civil rights."); *Keavney v. Cnty. of San Diego,* Case No.: 3:19-cv-01947-AJB-BGS, 2020 WL 4192286, at *4 (S.D. Cal. July 21, 2020) ("A plaintiff may refer to unknown defendants as Defendant John Doe 1, John Doe 2, John Doe 3, and so on, but he must allege specific facts showing how each particular doe defendant violated his rights.").

Here, Plaintiff identifies Does #1–5 only as "medical care providers." (Doc. 1-6 at 1.) As he fails to allege any specific facts regarding the individual conduct of any of the Doe Defendants, he fails to state a claim against Doe Defendants #1–5. *See Iqbal*, 556 U.S. at 678; *see also Leer v. Murphy*, 844 F.2d 628, 633–34 (9th Cir. 1988) (finding that the focus for § 1983 claims must be on the "individual defendant," and his individual "duties [and] discretion"); *Williams v. Cnty. of Los Angeles Dep't of Pub. Soc. Servs.*, Case No. CV 14-7625 JVS (JC), 2016 WL 8730914, at *5 (C.D. Cal. May 2, 2016), *report and recommendation adopted*, No. CV 14-7625 JVS (JC), 2016 WL 8737230 (C.D. Cal. May 20, 2016) ("Conclusory allegations that an indistinguishable group of defendants essentially engaged in identical misconduct . . . are insufficient to show that plaintiff is entitled to relief from any *individual* defendant.").

**D.    Conclusion**

As currently pled, Plaintiff has not stated a plausible Eighth Amendment claim against any of the Defendants in their individual capacities and the Complaint is therefore **DISMISSED** in its entirety.  See 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1); *Iqbal*, 556 U.S. at 678.

Given Plaintiff's *pro se* status, the Court nonetheless **GRANTS** him leave to amend his Complaint, as detailed below.  See *Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a *pro se* complaint without leave to amend [pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)] unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'") (quoting *Akhtar v Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)).

### III.    CONCLUSION

Based on the foregoing considerations, the Court:

**1.**    **GRANTS** Plaintiff's IFP Motion (Doc. 2).

**2.**    **ORDERS** the Secretary of the CDCR, or his designee, to collect the $350 filing fee owed in this case by collecting monthly payments from the account in an amount equal to twenty percent (20%) of the preceding month's income and forward payments to the Clerk of the Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2).  All payments must clearly identify the name and case number assigned to this action.

**3.**    **DISMISSES** the Complaint in its entirety without prejudice for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

**4.**    **DIRECTS** the Clerk of the Court to serve a copy of this Order on Jeff Macomber, Secretary, CDCR, P.O. Box 942883, Sacramento, CA 94283-0001, by U.S. Mail, or by forwarding an electronic copy to trusthelpdesk@cdcr.ca.gov.

**5.**    **GRANTS** Plaintiff leave to file a First Amended Complaint **on or before July 18, 2025**, which cures the deficiencies of pleading noted in this Order.  Plaintiff's Amended Complaint must be complete by itself without reference to his original

Complaint. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

If Plaintiff fails to file a First Amended Complaint **on or before July 18, 2025**, the Court will enter a final order dismissing this civil action based both on failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1), and failure to prosecute in compliance with a court order. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED.**

DATE: June 5, 2025

*/s/ Ruth Bermudez Montenegro*
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE